

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Overruled by O-7341
Dis. In as it conflicts

Honorable L. A. Woods
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

O-4605

Opinion Number O-4605
Re: Eligibility of school districts
for rural aid under special pro-
visos of H.B. 284, Acts 47th Leg.

On July 20, 1942, this department rendered Opinion
No. O-4705 which held that Madisonville Independent School
District was not eligible for tuition aid under Section 1 of
Article IV of the current rural aid bill (Acts 1941, 47th
Leg., R. S., H. B. 284) because of the fact that said school
district did not meet the eligibility requirements set out
in Section 1 of Article I of the Act. You now wish to know
"if any of the special provisions of the Act attempting to
provide either salary, transportation, or tuition aid to any
school district would be valid unless said district met all
eligibility requirements as prescribed in Article 1." Speci-
fically, you inquire about the following provisions, the
first under Article IV (High School Tuition Aid) and the sec-
ond, third, and fourth under Article V (Transportation Aid):

I. "Provided further that in consolidated dis-
tricts comprising nine hundred (900) square
miles or more of territory the above limi-
tations and restrictions shall not apply,
but instead a straight tuition payment of
Seven Dollars and Fifty Cents ($7.50) per
month per pupil shall be paid on all high
school pupils enumerated in the consolidated
district and living within the present boun-
daries of any territory annexed or otherwise
consolidated to the central receiving high
school".

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

2. "provided, however, all school districts conforming to county unit system of transportation and receiving no other type of aid, either tuition or salary, and comprising three (3) or more consolidated districts containing fifty (50) square miles or more of territory and employing three (3) or more less teachers than such school district teacher-pupil quota would permit may receive transportation aid only on a transportation budget showing need therefor on the basis of Two Dollars ($2) per month on all high school pupils who reside two and one-half ($\frac{1}{2}$) miles or more from the school attended and One Dollar and Fifty Cents ($1.50) per month on all elementary pupils residing two and one-half (2$\frac{1}{2}$) miles or more from its nearest grade school within such district."

3. " * * * and providing further that all school districts containing one hundred (100) square miles of territory or more may receive Two Dollars ($2) per month per pupil as transportation aid when there is a need shown therefor as provided herein and when same is recommended by the Director of Equalization and approved by the Joint Legislative Advisory Committee."

4. "Provided that transportation aid of One Dollar ($1) per month per pupil transported more than two and one half (2$\frac{1}{2}$) miles shall be paid to all school districts that contain nine hundred (900) square miles or more of territory and that operate twenty-five (25) or more buses and that levy a school tax of One Dollar and Fifty Cents ($1.50) on each one hundred dollars valuation; provided further that such aid shall be paid regardless of all other limitations or restrictions imposed in this Act."

Article I of the rural aid bill is entitled "ELIGI-
BILITY FOR AID." Section 1 of Article I reads as follows:

"Scholastic Population Of The District.— State
aid under the provisions of this Act shall be dis-
tributed in such a way as to assist all school
districts which have not fewer than twenty (20)
nor more than five hundred (500) original emmer-
ated scholastics within the grades classified to
be taught remaining in the district after trans-
fers out, and consolidated and/or rural high
school districts which have an average of not
more than two hundred (200) scholastics of each
original district composing the consolidated and/
or rural high school district unit; provided that
the maximum limitations as to scholastic popula-
tion for eligibility herein set forth shall not
apply for any type of aid to any school district
which is nine (9) miles or more in length or con-
tains forty-eight (48) square miles of territory
or more, provided there is not located in such
district an incorporated city or town having a
population of more than thirty-six hundred (3600)
inhabitants, according to the last preceding Fed-
eral Census. Districts maintaining a school at
home and having less than an average of one (1)
emmerated scholastic per square mile are exempt
from said minimum scholastic requirement and are
eligible for aid for only one teacher unless a
geographical barrier necessitates the operation
of two schools for the same race in said district,
such geographical barrier to be determined by the
State Department of Education subject to the ap-
proval of the Joint Legislative Advisory Committee.
If they can show budgetary need therefor, all other
districts having less than said minimum scholastic
requirement, shall be eligible for only tuition and
transportation aid to the nearest accredited school
on enumerated scholastics whose grades are not
taught in such district."

In Opinion No. O-4703 we held that as the scholastic
population of the school district under consideration exceeded

the population limitation of Section 1, the school district did not meet the eligibility requirements of Section 1. This fact disqualified the school district to receive aid even though it came within the terms of a special proviso standing alone.

In harmony with our ruling in Opinion No. O-4705, it is our further opinion that school districts which come within the terms of the first three above quoted provisos are ineligible to receive equalization aid unless such school districts meet the eligibility requirements of Section 1, Article I.

It might be argued that the words "the above limitations and restrictions shall not apply" appearing in the first quoted proviso (Article IV) would free a district from the necessity of meeting the general eligibility requirements of Article I. We think it clear that such words apply only to the limitations and restrictions of Article IV when it prescribes the conditions under which tuition aid will be granted. This becomes apparent, first, by the verbiage of Article IV and the proviso clause itself, and, second, by the wording and arrangement of provisions of the entire bill; that is, the eligibility of districts for participation in equalization benefits is dealt with in one article (Article I), and the various types of aid are covered by separate and distinct articles (Article III, Salary Aid; Article IV, High School Tuition Aid; and Article V, Transportation Aid). However, if the contention is made that such words lift districts within this proviso from the eligibility requirements of Section 1 of Article I (with which possible contention we would in no way agree), then the discussion appearing hereafter relative to the fourth quoted proviso would apply.

We think that the fourth quoted proviso presents a much more serious question in view of the words, "provided further that such aid shall be paid regardless of all other limitations or restrictions imposed in this Act." This language would remove a school district coming within the terms of the proviso from the restrictions and requirements imposed elsewhere in the Act if the same can legally be done. But it is our opinion that such proviso is a special or local law in contravention of that part of Section 56 of Article III, Constitution of Texas, which reads

Honorable L. A. Woods, page #5

as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

" * * *

"Regulating the affairs of counties, cities, towns, wards or school districts;

" * * * "

The Commission of Appeals in the case of Bexar County v. Tynan et al., 97 S. W. (2d) 467, made the following statement concerning this constitutional provision:

"It is well recognized that 'in determining whether a law is public, general, special or local the courts will look to its substance and practical operation rather than to its title, form and phraseology, because otherwise prohibitions of the fundamental law against special legislation would be nugatory.' "

And the Supreme Court in the case of Miller et al. v. El Paso County, 150 S. W. (2d) 1000, had the following to say about Section 56 of Article III:

"The purpose of this constitutional inhibition against the enactment of local or special laws is a wholesome one. It is intended to prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible. It is said that at an early period in many of the states the practice of enacting special and local laws became 'an efficient means for the easy enactment of laws for the advancement of personal rather than public interests, and encouraged

the reprehensible practice of trading and "logrolling." ' It was for the suppression of such practices that such a provision was adopted in this and many of the other states of the Union. 25 R.C.L., p. 820, sec. 68."

We are informed that only one school district in this State meets or could possibly meet the terms of this proviso; namely, the Edinburg Independent School District. We can perceive no real basis for this purported classification. It was obviously passed for the benefit of one school district. For the reasons given in the cited cases it is our opinion that the proviso is unconstitutional and void and that, therefore, no moneys may be paid under the same.

This opinion is limited in its conclusions to the specific provisions considered.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By George W. Sparks
George W. Sparks
Assistant

GWS/s

APPROVED DEC 3, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

